IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00-cv-635 |
| v. | ) | |
| | ) | Judge Charles R. Norgle, Sr |
| JAMES A. BLAZINA, | ) | |
| Defendant. | ) | |

**PLAINTIFF UNITED STATES OF AMERICA'S RESPONSE TO
DEFENDANT JAMES A. BLAZINA'S MOTION TO VACATE DEFAULT JUDGMENT
AND TO QUASH OR STAY CITATIONS TO DISCOVER ASSETS**

The plaintiff United States of America ("United States") responds to defendant James A. Blazina's ("Blazina or Defendant") motion to vacate default judgment and to quash or stay citations to discover assets and states as follows:

**I.      Plaintiff United States' Argument in Brief**

Blazina's motion to vacate presents very limited technical objections arguing that the Court improperly authorized alternative service under Fed. R. Civ. P. 4(e) without following applicable Illinois rules.  Blazina alleges that the United States' motion for alternative service never should have been granted because (1) it attached declarations to its motion for alternative service rather than affidavits, and (2) its declarations did not "state a reason why service was impractical or include a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful."  See Docket Ent. No. 21, pp. 4-5.

However, Blazina ignores the fact that the declarations *substantially* addressed why personal service was impractical and that this conclusion was the result of the government's diligent inquiry.  This satisfies the statutory requirement, which case law holds is met not by

invoking "magic words" — Blazina's position — but rather by demonstrating the diligent efforts the plaintiff made to locate a defendant and demonstrating by those efforts that personally serving the defendant was impractical. Moreover, Blazina's affidavit supporting his motion fails to address whether the United States *could* have served Blazina had the government exercised some arguably greater degree of diligence in seeking to locate him.

## II.     Background

### A.     Case Filing and Attempts to Locate Blazina

This United States filed this action on February 1, 2000, to collect unpaid trust fund penalty assessments made on January 17, 1990, February 5, 1990, February 12, 1990, June 12, 1990, February 4, 1991, April 29, 1991, August 5, 1991, and October 5, 1992, against Blazina[1], in the original amount of $253,479.68 plus interest. See Docket No. 21-1, pp. 1-5 (Exhibit A). After filing the action, counsel for United States attempted to verify Blazina's address from online databases, the U.S. Postal Service, and the Illinois Bar Disciplinary Committee. The United States then attempted to serve Blazina at his last known address, the street address associated with an active post office box used by him, and the address indicated on his driver's license. Id., pp. 16-20 (Declaration of Attorney Turanchik). The process server determined that Blazina moved from his last known address and was unknown at and had moved from the address associated with his active post office box. Id. United States counsel also asked for the

---

[1] Blazina, a licensed attorney in the state of Illinois since 1977, has a history of challenging service. In a 1988 foreclosure action, Blazina moved to quash service on the grounds that he was not personally served and substituted service on his brother John Blazina at 1373 Foxdale Drive in Addison, Illinois, was improper because 1373 Foxdale Drive was not his dwelling place or abode. Connecticut Nat'l Mortg. Co. v. Blazina, No. 88-10882, 1989 WL 84623 (N.D. Ill. Jul. 17, 1989). After the judge ruled in his favor on the service issue, Blazina was served by publication and ultimately lost on the merits. Connecticut National Mortgage Company v. Blazina, No. 88-10882, 1989 WL 153002 (N.D. Ill. Nov. 8, 1989).

assistance of an investigator, who could not locate Blazina at a state court hearing in which he was counsel of record, and could not identify an address for Blazina from local telephone directories, the local telephone or electric company, the Illinois Bar Disciplinary Committee, or telephone information. Id., pp. 21-22 (Declaration of Donald Norton).

### B. *The United States' Motion for Alternative Service*

Unable to locate him, the United States moved for an extension of the time to serve Blazina and asked to serve him via U.S. mail by mailing the summons and complaint to four addresses, including the post office box listed on his attorney registration, the active post office box discovered by United States counsel, and the two addresses associated with his post office boxes.[2] Id., pp. 6-22 (Exhibit B). The United States filed a motion including a memorandum of law and two declarations. Id.

The first declaration, by attorney Stephen J. Turanchik, attested that he had researched Blazina's street address through Lexis Nexis and Westlaw, the U.S. Postal Service, and the Illinois Bar Disciplinary Committee, that he identified an active post office box for Blazina, was unsuccessful in serving him at three addresses, including his last known address, the address on his driver's license, and the address associated with his active post office box. Id., pp. 16-17. Turanchik's declaration also attached two affidavits of process servers stating that Blazina had moved from his last known address and left no forwarding address, and that he was unknown at the address associated with his active post office box, and a declaration identifying the address associated with his active post office box. Id., pp. 17-20.

---

[2] The address associated with the post office box listed on his attorney registration was 1373 Foxdale Drive, Addison, Illinois, which Blazina alleged was not his residence in the 1988 litigation. See Connecticut Nat'l Mortg. Co., *supra*, 1989 WL 84623, at *2, n. 1. It is unclear whether Blazina ever had an interest in that property. According to the Registry of Deeds, it has been held by third parties since at least 1993, long before the commencement of this litigation.

The second declaration, by Donald Norton, attested that he could not locate Blazina at a state court hearing in which he was counsel of record, and could not identify an address for Blazina from local telephone directories, the local telephone or electric company, the Illinois Bar Disciplinary Committee, or telephone information. Id., pp. 21-22. Counsel for the United States sent a copy of his notice of motion and motion to Blazina's post office box although the Illinois Rule allows motions for alternative service to be made without notice. 735 ILCS 5/2-203.1; See Exhibit B2 (Notice of Motion and Motion). Upon information and belief, those documents were not returned to the United States, and Blazina does not state that he did not receive them. Id., pp. 24-25 (Exhibit C). Consequently, it is not unreasonable to assume that Blazina received the notice of motion and motion and failed to respond to them.

### C. *Alternative Service on Blazina and Default Judgment*

After the Court granted its motion, the United States served Blazina by mailing the summons and complaint to all four addresses its investigation had associated with Blazina along with a copy of the order authorizing service by mail. See Exhibit F (Certificate of Service and Letter to Blazina). Blazina's affidavit does not state that he failed to receive the Complaint, and upon information and belief, these packages were not returned to the United States. Consequently, it is reasonable to assume that he did in fact receive a copy of the summons and complaint. See Docket No. 21-1, pp. 24-25 (Exhibit C). Notably, Blazina, a lawyer, states in his affidavit that he was "never served personally or at my home with a summons and complaint." Docket No. 21-4 (Exhibit C), ¶ 2. Blazina's carefully chosen words are meaningless because the United States has never contended it "personally served" Blazina but rather relied upon the alternative service this Court authorized. In any event, once Blazina failed to respond to the

4

complaint, the United States moved for a default judgment, which the Court granted on September 15, 2000. See Docket Nos. 6-10, 21-1, p. 27 (Exhibit D).

### D. *Post-Judgment Collection Efforts*

When undersigned counsel located Blazina and served him with two citations to discover assets, Blazina filed a motion to vacate the judgment and to quash or stay the citation proceeding.[3] See Docket No. 21. As noted above, he states only limited technical objections to the United States' motion for alternative service without a basis in fact or in law regarding the form and content of the declarations submitted by the United States in support of alternative service. Notably, as described below, his declaration does not state that he failed to receive a copy of the Complaint or that reasonable investigatory efforts beyond those actually undertaken could have located him and allowed for personal or substitute service. See Docket No. 21-1, pp. 24-25 (Exhibit C).

## II. The United States Served Blazina in Accordance with the Court's Order Authorizing Alternative Service.

### A. *Alternative Service under the Illinois Rules*

The Federal Rules of Civil Procedure permit for service of process to be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1). The Illinois Rules of

---

[3] Previously, on June 29, 2010, undersigned counsel sent a notice of deposition of Blazina, his parents Emil and Helen Blazina, and Cory B. West & Co., to Blazina at P.O. Box 68747, Schaumburg, IL. See Exhibit G (Notice of Depositions and Subpoenas). Afterward, process servers were unable to find and serve any of the identified deponents. Nonetheless, the notice was not returned to the United States. It is reasonable to assume that Blazina did in fact receive the notice. At that time, Blazina did not take any action based on the notice or contact undersigned counsel.

Civil Procedure provide for personal or substituted service. 735 ILCS 5/2-203(a). However, if personal or substituted service is impractical, the Illinois Rules provide that:

> the plaintiff may move, without notice, that the court enter an order directing a comparable method of service. The motion shall be accompanied with an affidavit stating the nature and extent of the investigation made to determine the whereabouts of the defendant and the reasons why service is impractical under items (1) and (2) of subsection (a) of Section 2-203, including a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful. The court may order service to be made in any manner consistent with due process.

735 ILCS 5/2-203.1. In accordance with that procedure, counsel for the United States submitted a motion with two declarations (the first of which attached two affidavits and an additional declaration), which are described in more detail above, and generally outline the United States' efforts to locate and to serve Blazina, and why personal or substitute service would be impractical.

      **B.**    *The United States' Declarations Were a Valid Substitute for an Affidavit under the Illinois Rules.*

Defendant's first objection to the United States' motion for alternative service is that its declarations did not satisfy the requirement that affidavits be submitted. This argument is without merit. Federal law allows for unsworn declarations to be used in place of affidavits. See 28 U.S.C. § 1746. Furthermore, the Illinois Rules provide:

> Unless otherwise expressly provided by rule of the Supreme Court, whenever in this Code any complaint, petition, answer, reply, bill of particulars, answer to interrogatories, affidavit, return or proof of service, or other document or pleading filed in any court of this State is required or permitted to be verified, or made, sworn to or verified under oath, such requirement or permission is hereby defined to include a certification of such pleading, affidavit or other document under penalty of perjury as provided in this Section.

735 ILCS 5/1-109. In compliance with this section, both of the government's declarations were signed under penalty of perjury, two affidavits were included as an attachment to one of the

6

declarations, and a third declaration (attached to one of the two primary declarations) was signed under penalty of perjury.

### C. The United States' Declarations Substantially Complied with Illinois' Alternative Service Requirements.

Defendant's second objection is that the United States' declarations did not satisfy the requirements of the statute because they were not sufficiently precise. The applicable statute requires affidavits to (1) state the nature and extent of the investigation made to determine the whereabouts of the defendant, (2) state the reasons why service is impractical, and (3) include a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful. The declarations the Court relied upon when authorizing alternative service substantially complied with these requirements.

The declarations demonstrate that the United States attempted to find Blazina's address in at least eight sources, including:

- Lexis-Nexis,
- Westlaw,
- the U.S. Postal Service,
- the Illinois Bar Disciplinary Committee,
- local telephone directories,
- the local electric company,
- the local telephone company, and
- telephone information.

The declarations further demonstrate that the government attempted to serve Blazina personally at least three times at three different street addresses discovered in their searches, including the address on his driver's license, his last known address, and the address associated with an active P.O. box; that they were unsuccessful in those attempts; and that Blazina did not appear in court

7

where he was counsel of record for a case. The attached affidavits and declaration also indicated that Blazina had moved from two of the known addresses and left no forwarding address.

The declarations clearly describe an investigation which made numerous attempts to find Blazina using reliable, regularly accepted means of skip-tracing an absent party. In doing so, the declarations demonstrate a reasonable and reasonably diligent, although unsuccessful, investigation to find Blazina, and they allowed the Court to conclude that either personal or substituted service on Blazina was impractical. So, while they do not mimic the precise words in the statute, the declarations substantially compiled with Illinois law. As the Illinois Court of Appeals has held:

> While a party requesting an alternative means of service must strictly comply with section 2-203.1, its requirements for the affidavit are not magic words that must be slavishly copied before alternative service will be permitted. Here, although Stalter's affidavit did not state that "service under section 2-203 is impractical because * * *," it is clear from the affidavit as a whole that service was impractical because the defendant could not be found. Stalter described her efforts to find defendant, which led to attempted service at three different home addresses as well as the county courthouse. The trial court could clearly infer from this that defendant could not be located and, therefore, personal or substituted service was impractical.

People v. Harrison, 810 N.E.2d 589, 593 (Ill. App. 2004), appeal denied 823 N.E.2d 978 (Table) (Ill. 2004). Seen in this light, Blazina's objections to the order asks this court to overturn its decision authorizing alternative service because the United States failed to parrot the Illinois statute rather than substantially comply with its terms. Blazina's objection, found in a single paragraph of an 8-page motion, complains that the declarations fail to "state a reason why service was impractical or include a specific statement showing that a diligent inquiry . . . was made . . ." Motion, pp. 3-4. As such, Blazina is merely saying that the government's declarations did not utter "magic words" and under Harrison that objection must be rejected.

Harrison provides one more reason why Blazina's motion must fail. Harrison held that a defendant contesting a default must demonstrate that the efforts to find him lacked diligence and that had the plaintiff exercised reasonable diligence he could have been found. Id. at 594. Blazina does not claim that the United States' efforts lacked diligence, or that the United States could have found him with more reasonable efforts. For example, Blazina's affidavit does not indicate that he could have been readily found or say words to the effect that: "The government could have found me at 123 Maple Street, Chicago, Illinois, where I was living for 5 years, had they merely looked up my address and telephone number in the local telephone directory." Thus, Blazina's motion does not even create an issue of whether the United States complied with Illinois' alternative service statute because he failed to allege or show that reasonable steps beyond those taken by the United would have led to him be found for personal or substitute service. Blazina also does not allege that the method of service by mailing the summons and Complaint to four addresses violated due process.

### III. Blazina's remaining contentions provide no independent grounds to vacate the judgment and are meritless.

To the extent that Blazina does not contend that any other defect in the judgment aside from improper service merits vacating the judgment, the United States believes that no response is necessary to Blazina's allegations regarding the statute of limitations, partial payment of the judgment by his brother, or his allegations that he was not willful and responsible and thus should not have been found liable for the assessments. Nonetheless, to the extent that his motion could be construed to seek relief on other grounds, the United States offers certain observations regarding those contentions.

    A.    *The Period of Limitations Had Not Expired for the Majority of the Assessments at Issue Before the Suit was Filed.*

Blazina correctly describes that the 1990 amendment to 26 U.S.C. § 6502 changed the statute of limitations to collect tax assessments from 6 years to 10 years. However, the effect of the amendment was to extend the statute of limitations on collection on all collection for all assessments for which the period of limitations had not expired on the effective date of the amendment, November 5, 1990. As that amendment states:

> SEC. 11317. 10–YEAR PERIOD OF LIMITATION ON COLLECTION AFTER ASSESSMENT.
>
> << 26 USCA § 6502 >>
> (a) IN GENERAL.—Subsection (a) of section 6502 (relating to collection after assessment) is amended—
> (1) by striking "6 years" in paragraph (1) and inserting "10 years", and
> (2) by striking "6–year period" each place it appears in paragraph (2) and inserting "10–year period".
> . . . .
> << 26 USCA §§ 6323 NOTE, 6502 nt >>
> *(c) EFFECTIVE DATE.—The amendments made by this section shall apply to—*
> (1) taxes assessed after the date of the enactment of this Act, and
> *(2) taxes assessed on or before such date if the period specified in section 6502 of the Internal Revenue Code of 1986 (determined without regard to the amendments made by subsection (a)) for collection of such taxes has not expired as of such date.)*

Pub. L. No. 101–508, § 11317 (1990) (emphasis added) (current version at 26 U.S.C. § 6502); see also United States v. Wright, 57 F.3d 561 (7th Cir. 1995). None of the limitation periods for collection of any of the assessments included in the Complaint had expired by November 5, 1990; therefore the 1990 amendment extended the limitations period to 10 years for all assessments. Accordingly, the United States may have missed the statute of limitations on one assessment, which comprises less than 7% of the current balance of the judgment, however, the period of limitations as to the majority of the assessments had not expired when the suit was brought.

10

      ***B.    Even if the United States Missed the Statute of Limitations With Respect to One Period, That Does Not Provide Grounds to Vacate the Judgment.***

The judgment is not void pursuant to Fed. R. Civ. P. 60(b)(4) even if the United States missed the statute of limitations with respect to one assessment. Statute of limitations is an affirmative defense which must be asserted in a party's responsive pleading, and is waived if not asserted. Fed. R. Civ. P. 8(c)(1); United States v. Denny, No. P-CIV-75-58, 1976 WL 1130, at *1 (S.D. Ill. Sept. 7, 1976). Since the statute of limitations is not jurisdictional, it does not provide grounds to vacate the judgment. United States v. Smith, No. C-95-2744 FMS, 1997 WL 168504, at *2 (N.D. Cal. Mar. 27, 1997).

      ***C.    Blazina's Other Defenses Also Do Not Provide Grounds to Vacate the Judgment.***

Blazina also argues that he was not liable for the assessments because he was not willful or responsible. That is not a ground to vacate the judgment. Those defenses could have been asserted in the underlying litigation and accordingly do not rise to the level of "extraordinary circumstances" that need to be shown to justify relief under Fed. R. Civ. P. 60(b)(6). Longs v. City of South Bend, 201 Fed.Appx. 361, 364 (7th Cir. 2006) (citing Lowe v. McGraw-Hill Cos., 361 F.3d 335, 342 (7th Cir.2004)) (noting that "the 'typical' Rule 60(b)(6) case is one where 'there just is no way the party seeking to set aside the judgment could have discovered the ground for doing so within a year of its entry,' as required by Rule 60(b)(1), (2), and (3)."). As described above, it is reasonable to assume that Blazina received at least the United States' notice of motion and motion in support of alternative service, the order granting that motion, and the summons and Complaint. There is no reason he could not have raised this defense earlier.

Finally, Blazina's arguments that the liabilities included in judgment have been

11

"at least partially paid already," "reduced and partially paid down," or that "much of the allegedly unpaid taxes have in fact been paid" is not grounds to vacate the judgment. See Docket No. 21-1, p. 6; Fed. R. Civ. P. 60(b)(5) (requiring that the judgment be satisfied). Blazina also introduces no evidence to support these contentions.[4]

### IV.     There are no grounds to quash or stay the citations.

Rule 60 explicitly provides that a motion for relief from judgment "does not affect the judgment's finality or suspend its operation." Fed. R. Civ. P. 60(c)(2). Accordingly, the mere filing of a 60(b) motion does not entitle the defendant to quash the citations issued against him, Legal Collections, Inc., and his wife. See, e.g., Cooper v. Faith Shipping, No. 06-892, 2010 WL 1729127, at * 3 (E.D. La. Apr. 27, 2010). Similarly, a motion to vacate a judgment under Illinois state law "does not affect the order or judgment, or suspend its operation." 735 ILCS 5/2-1401.

Although discretion exists, the "court should not, of course, exercise its discretion in favor of a stay unless it appears that there is, at least, a possibility that the Rule 60 motion will be successful." Wilson Research Corp. v. Piolite Plastics Corp., 234 F.Supp. 234, 235 (D. Mass. 1964). Courts generally consider four factors in determining whether to grant a stay of a judgment, which are the same as preliminary injunction factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v.

---

[4] The IRS exhaustively researched this issue and found a few payments that had not been previously credited against Blazina's liabilities. Those payments have now been applied. Even after applying those payments, the current balance of the judgment is $942,711.54, as of August 8, 2011, plus interest which continues to accrue. See Exhibit H (Interest Calculations).

12

Braunskill, 481 U.S. 770, 776 (1987). As described above, Blazina has not shown a likelihood of success. He has also not argued that he will be irreparably injured, that a stay would not substantially injure the United States, or where public interest lies. Given that the United States is currently only seeking testimony and documents it is difficult to see how Blazina would be irreparably injured at this stage. While the United States will progress to further remedies against Blazina's assets and/or income, by that time, the Court may be able to decide the motion to vacate, obviating the need for temporary relief. In contrast, quashing the citation would eliminate the lien created on the taxpayer's non-exempt assets, allowing him to freely transfer assets in an effort to avoid future collection, while staying it would delay the United States' collection efforts on a substantial judgment. Courts have long recognized the strong public interest in the efficient collection of taxes. See, e.g., MarCon Inc. v. Untied States, 2010 WL 2802656, at *6 (D. Idaho Jul. 14., 2010) (citing Bob Jones Univ. v. Simon, 416 U.S. 725, 736 (1974)). Accordingly, since Blazina's objections to the alternative service are very limited and unsupported in Illinois law and he has not made any allegations under the relevant factors, the Court should not quash or stay collection upon his limited and baseless objections.

**V.      If the Court nonetheless quashes or stays the citation, Defendant should be required to post an appropriate bond given the amount of the judgment.**

Under the Federal Rules, a stay of collection may be granted only on appropriate terms providing for the opposing party's security. Fed. R. Civ. P. 62(b). The Local Rules in this District provide that a bond pending appeal

> shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award.

13

LR 62.1 Here Defendant is asking the Court to stay collection of a judgment in the amount of over $400,000.00 (whose current balance is over $940,000.00) without making any provision to post bond to protect the United States' interests. This is highly prejudicial to the United States, particularly where all of the assets available to satisfy the judgment currently known to the United States' counsel are held in other names, including land trusts, corporations, and trusts. Quashing the citations or otherwise staying discovery would create a risk that those assets may be dissipated or transferred to other parties, further complicating the United States' collection efforts. Under these circumstances, Blazina should not be afforded temporary relief without affording the United States adequate protection in the form of a bond with surety for the full amount due under the judgment, plus costs and additional interest.

## **VI.** **Conclusion**

The Defendant's motion to vacate and to stay or quash citations to discover assets should be denied in its entirety because the United States' alternative service complied with Illinois state law and no other grounds alleged by Defendant merit vacating the judgment.

Respectfully submitted,

JOHN A. DiCICCO
Principal Deputy Assistant Attorney General
Tax Division. U.S. Department of Justice

/s/ Gabrielle G. Hirz
GABRIELLE G. HIRZ
Trial Attorney
Tax Division. U.S. Department of Justice
P.O. Box 55,Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-2279
Fax: (202) 514-5238
Email: Gabrielle.G.Hirz@usdoj.gov

Local counsel:
JOSEPH A. STEWART
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that on September 9, 2011, I filed the foregoing document with the CM/ECF system, which will send notice to:

      JONATHAN STROUSE
      (Attorney for James A. Blazina)
      jonathan.strouse@hklaw.com; beth.koester@hklaw.com

      /s/ Gabrielle G. Hirz
      GABRIELLE G. HIRZ
      Trial Attorney
      Tax Division. U.S. Department of Justice