

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 00 C 635 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| JAMES A. BLAZINA | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Charles R. Norgle, District Judge

Before the court is James A. Blazina's ("Blazina") Motion to Vacate Default Judgment and to Quash or Stay Citations to Discover Assets. For the following reasons, the motion is denied.

## I. BACKGROUND

The United States obtained a $440,109.13 default judgment for unpaid trust fund penalty assessments against Blazina on September 15, 2000. Earlier, on June 7, 2000, the court had authorized alternate service of process under Illinois law. Eleven years later, the government located Blazina. The judgment is now worth over $940,000. In 2011, the government claims it served Blazina and a corporate entity, Legal Collections, Inc., with citations to discover assets. Opposing the government's efforts, Blazina argues that the original service of process was deficient, rendering the judgment void for lack of personal jurisdiction and wiping out the citations. Blazina contends the government ignored the rules for alternate service. The government argues that Blazina's objections are technical and that it substantively followed the rules for alternate service.

## II. DISCUSSION

### A. Standard of Review

Rule 55(c) allows a court to vacate a default judgment pursuant to Rule 60(b). Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc., 28 F.3d 42, 44-45 (7th Cir. 1994). Under Rule 60(b), a party must demonstrate "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." Cracco v. Vitran Express, Inc., 559 F.3d 625, 630–31 (7th Cir. 2009). This "lenient" standard favors trials on the merits. Id. at 631. However, the standard as applied to vacating a default judgment is more stringent than for setting aside an entry of default. See id. (citing United States v. Di Mucci, 879 F.2d 1488, 1495 (7th Cir. 1989)). Failing to make any one of these showings warrants denial of a motion to vacate. See Sun v. Bd. of Trs. of the Univ. of Ill., 473 F.3d 799, 811 (7th Cir. 2007) ("The language of our case law is mandatory, stating that a party seeking to vacate a default judgment must make the required showings.").

"Good cause," the first conjunctive factor, refers to the basis for judicial action to set aside a default judgment, not to an "excuse for the defendant's inattention to the case." Sims v. EGA Prods., Inc., 475 F.3d 865, 868 (7th Cir. 2007) ("[D]amages disproportionate to the wrong afford good cause for judicial action."). "Routine problems" are not good cause. Pretzel & Stouffer, 28 F.3d at 46.

"Quick action," the second prong, evades clear exposition, though courts have found that a period of more than a week or two tends to fail this prong. Compare Cracco, 559 F.3d at 631 (moving to set aside entry of default filed eight days after the entry is sufficiently prompt to meet the element of quick action), and On A Roll Trucking v.

2

Superior Freight, No. 10 C 6787, 2011 WL 1114505, at *2 (N.D. Ill. Mar. 25, 2011) (moving to vacate default judgment "within a month" of its entry is quick enough), with Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994) (delay of five weeks did not constitute quick action); Zuelzke v. Tool & Eng'g Co. v. Anderson Die Castings, Inc., 925 F.2d 226, 230 (7th Cir. 1991) (delay of four months "could hardly be described as prompt"); Merrill Lynch Mortg. Corp. v. Narayan, 908 F.2d 246, 252 (7th Cir. 1990) (finding a delay of nearly a year "egregiously tardy"). However, when a movant challenges a lack of personal jurisdiction under Rule 60(b), there is, as a practical matter, no time limit. Philos Tech., Inc. v. Philos & D, Inc., 645 F.3d 851 856-57 (7th Cir. 2011) (citing Pacurar v. Hernly, 611 F.2d 179, 181 (7th Cir. 1979)).

"Meritorious defense," the third prong, means a movant should ground its case in "facts which would support a meritorious defense of the action" and offer more than general denials and bare conclusions. Pretzel & Stouffer, 28 F.3d at 46 (citations omitted). The defense must also be "good at law" in order to "give the factfinder some determination to make." Bieganek v. Taylor, 801 F.2d 879, 882 (7th Cir. 1986).

Beyond the three prongs, other factors may properly influence the district court. Swaim v. Moltan Co., 73 F.3d 711, 722 (7th Cir. 1996). These include "the burden on [the court's] docket" and "the legitimate reliance on the default by the nonmoving party." Id. The court should also be mindful of "policy considerations favoring termination of stalled litigation against the possibility of injustice based, in part, upon the substantive merit of the nonmovant's claims and the moving party's proffered excuse for the default." Id. Given these many factors, district courts have wide discretion in considering a motion to vacate. See Jones, 39 F.3d at 162.

## B. Motion to Vacate Default Judgment

Blazina argues he has good cause because service of process was deficient. A failure to serve process would deprive the court of personal jurisdiction, rendering the default judgment void and making additional analysis of Blazina's motion to vacate moot. See Guess?, Inc. v. Chang, 163 F.R.D. 505, 508 (N.D. Ill. 1995) (citing Textile Banking Co. v. Rentschler, 657 F.2d 844, 850 (7th Cir. 1981)); see also be2 LLC v. Ivanov, 642 F.3d 555, 557 (7th Cir. 2011) (absent personal jurisdiction the default judgment is void). Here, the "good cause" showing is dispositive. This is because the Rule 60(b) prongs are conjunctive and Blazina offers no ground for good cause other than a lack of personal jurisdiction, which would vacate the judgment on its own.

Blazina's argument is that the government's efforts to locate him over a decade ago were inadequate and its motion for alternate service in the year 2000 was deficient. The government acknowledges it did not serve Blazina personally, at his abode, or via registered agent. See Fed. R. Civ. P. 4(e)(2). Instead, with court approval, the government served Blazina by alternate service pursuant to the Illinois Code of Civil Procedure (the "Code"). See Fed. R. Civ. P. 4(e)(1); 735 ILCS 5/2-203.1. The government mailed process to four addresses associated with Blazina. The Code authorizes a court to order comparable service on a motion with proper support:

> The motion shall be accompanied with an affidavit stating the nature and extent of the investigation made to determine the whereabouts of the defendant and the reasons why service is impractical under items (1) and (2) of subsection (a) of Section 2-203, including a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful.

735 ILCS 5/2-203.1. Blazina argues the government failed to attach any affidavit to its motion to serve by court order. Although the government did attach declarations from a lawyer and from a government investigator, Blazina contends these failed the Code's requirements because the declarations showed neither that service was impractical nor that a diligent inquiry was made. Def.'s Mot. to Vacate Default J. & to Quash or Stay Citations to Discover Assets 4-5.

The formalities of service under Rule 4 must be observed in all cases. United States v. Ligas, 549 F.3d 497, 500 (7th Cir. 2008) ("A district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process."). Here, the state Code governs that formality, and only a small handful of published Illinois state cases apply Section 2-203.1. See Raza Telecom, Inc. v. Obio Telecom, Inc., No. 09 C 1525, 2010 WL 3238831, at *2 (N.D. Ill. Aug. 12, 2010). The parties focus on Waller v. Harrison, 348 Ill. App. 3d 976, 982 (Ill. App. Ct. 2004) (affirming a trial court's order of alternate service). Harrison concerns the adequacy of affidavits accompanying a motion for alternate service under Section 2-203.1. Id. at 977-82. Harrison is close to this case on the facts. The parties agree Harrison applies but read it to yield opposite results.

Blazina argues the government's failure to attach affidavits, as opposed to declarations, to its 2000 motion for alternate service dooms it under Section 2-203.1. The government contends that because state and federal law allow declarations made "under penalty of perjury" to be used in place of affidavits, Blazina's argument fails. See 28 U.S.C. § 1746; 735 ILCS 5/1-109. The court agrees with the government. Along with its motion for alternate service, the government attached two affidavits and two declarations

5

signed under penalty of perjury. The submissions were proper in form and the court is not divested of personal jurisdiction on that basis.

Blazina argues that even if the declarations are proper in form, they violate Section 2-203.1 because "they neither show that the United States made a diligent inquiry into Blazina's location, nor do they include a specific statement showing that such diligent inquiry was made." Def.'s Reply to Mot. to Vacate Default J. and to Quash or Stay Citations to Discover Assets 3. Blazina contends that although the state court in Harrison did not require "magic words," the court did require a "specific statement" to satisfy the Code. Id. at 3-4. Blazina concludes that "[i]n this case, the [government's] declarations fail . . . because they contain no specific statement whatsoever showing a diligent inquiry," which is "an omission the Harrison court did not permit." Id. at 4.

In contrast, the government reads Harrison to require substantive compliance with the purpose of 2-203.1 to ensure due process for litigants. In Harrison, the state in a civil action moved for alternate service after personal service failed. 348 Ill. App. 3d at 977-78. The trial court granted the motion, which included an affidavit from the state's attorney. Id. at 978. The affidavit described efforts to find and serve the defendant. Id. County recorder records were searched, yielding a post office box, which was traced to a street address where a sheriff's deputy repeatedly tried and failed to serve the defendant. Id. A "colleague" of the state's attorney provided a Wisconsin address, but mailed process was returned. Id. A third address was located in Illinois, but the summons was returned because the address did not exist. Id. The state's attorney said in the affidavit that "[a]lthough a diligent effort has been made, no other information has been found as to where [the defendant] . . . can be personally served." Id. Following alternate service

6

by publication, the defendant did not appear and the court entered a default judgment against the defendant. Id. at 977.

The defendant in Harrison moved to vacate the default judgment, arguing, much as Blazina does, that service was deficient because the state's attorney's affidavit "did not state the reasons why service [was] impractical pursuant to section 2-203 or a specific statement showing that a diligent inquiry as to the location or the individual defendant was made and reasonable efforts to make service have been unsuccessful." Id. at 980 (quotations omitted). The state appeals court was unpersuaded. Id. The Harrison court found that "it is clear from the affidavit as a whole that service was impractical because defendant could not be found." Id. at 981. Because the affidavit described the specific efforts to locate the defendant, "the trial court could clearly infer from this that defendant could not be located and, therefore, personal or substituted service was impractical." Id. The court found that the state's attorney's statement asserting "a diligent effort had been made" was "substantially similar" to the required "specific" statement in the Code. Id.

The Harrison court rejected a requirement of magic words: "We will not hold the affidavit insufficient because it did not track the statutory language precisely." Id. The court examined the contents of the affidavit, which showed six efforts to serve the defendant at three addresses. Id. These efforts were "diligent" under the Code and "[n]othing in the record suggest[ed] that the State was not diligent in attempting personal service." Id. The court discussed In re Marriage of Schmitt, 321 Ill. App. 3d 360, 369 (Ill. App. Ct. 2001) (eleven attempts at service showed diligence), but reasoned that "[d]iligence must depend on the facts of the specific case" because "whether a party has been diligent does not depend upon the sheer number of attempts at service." Id. at 982.

7

The court also found that diligence was evident because the state's attorney "exhausted all of its leads" and Section 2-203.1 "does not require futile attempts." Id.

As in Harrison, here a government attorney attached a declaration under penalty of perjury to a motion for alternate service. Def.'t Mot. to Vacate Default J. & to Quash or Stay Citations to Discover Assets Ex. A, at 16-17. Stephen J. Turanchik, a trial attorney for the Department of Justice, stated in his June 5, 2000 declaration that he searched for Blazina on Lexis-Nexis and Westlaw. The search yielded an active P.O. Box address in Chicago and a West Byron Street address in Chicago, both used by Blazina. Id. Turanchik stated the government tried and failed to serve Blazina at the West Byron Street address; a 1660 North LaSalle Drive address in Chicago, which was on his driver's license; and a 1515 East Central Road address in Arlington Heights, Illinois, which was linked to the active P.O. Box address. Id. at 17. The declaration states that the address Blazina listed with the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ("ARDC") is P.O. Box 10449 in Chicago. Id. In addition, two process server affidavits are attached to Turanchik's declaration, showing attempted service at the West Byron Street address, id. at 18, and at the Arlington Heights address, id. at 20.

A second declaration, filed a day after Turanchik's, is from an investigator for the U.S. Attorney named Donald Norton. Id. at 21. Norton states, under penalty of perjury, that Turanchik asked him to serve Blazina. Id. Norton explains that Blazina is an attorney licensed in Illinois, and that the P.O. Box listed with the ARDC is associated with a street address on Foxdale Drive in Addison, Illinois. Id. at 21-22. Norton also states that Blazina, a lawyer, did not show up at a court date, was not listed as a phone or

electric customer, and was not listed in phone books or with information. Id. at 22. Norton further states that when he was investigating the P.O. Box a postal worker told him Blazina "refuses to sign for registered or certified mail." Id.

Under Harrison, the court in assessing compliance with Section 2-203.1 asks whether "it is clear from the affidavit as a whole that service was impractical because defendant could not be found." 348 Ill. App. 3d at 981. The sworn support that Section 2-203.1 requires for alternate service comes from the Turanchik and Norton declarations. Turanchik states under penalty of perjury that personal or abode service was attempted on Blazina at three physical addresses, two in Chicago and one in Arlington Heights. Two affidavits attached to the declaration further vouch for two of the three attempts. Norton's declaration, while not ideally drafted, implies that Norton attempted to serve Blazina both at a court date and at an Addison business address. Norton also declared that Blazina was not listed as a utility consumer, in phone books or information, and did not sign for mail at his active post office box. The Harrison court found that six attempts at three addresses demonstrated impracticality. Id. Similarly, based on five attempts to serve Blazina at four addresses and once in court, and on his off-the-grid presence, the declarations "as a whole" show Blazina was scarce and service was impractical. See id.

The Harrison court further considered whether under Section 2-203.1 "a diligent effort had been made" and whether the affidavit contained a statement "substantially similar" to the statement required by the Code. Id. The Code requires a statement to the effect that "a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful." Id. (quoting 735 ILCS 5/2-203.1.). In Harrison, the state's attorney stated in his affidavit: "Although a diligent

effort has been made, no other information has been found as to where J. Harrison can be personally served." Id. The Harrison court found that aside from the statutorily prescribed recitation, the state's efforts had, in fact, been diligent, taking into account the documented efforts to serve the defendant as well as the fact that "[n]othing in the record suggests that the State was not diligent." Id.

Here, the government makes no single specific statement alleging diligence. It makes several. Section 2-203.1 does not require magic words, but instead "a specific statement *showing*" diligence and reasonable efforts. 735 ILCS 5/2-203 (emphasis added). The Code thus requires a *showing* of a specific instance or instances of diligence. See Harrison, 348 Ill. App. 3d at 982 ("Diligence must depend on the facts of the specific case."). This is in step with the purpose driving strict compliance with rules for service—to ensure due process. The court finds that the declarations of Turanchik and Norton include many statements describing specific diligent efforts by the government. This showing of diligence satisfies 2-203.1. See id. The government's motion was not deficient. The court therefore had and retains personal jurisdiction over Blazina. Because this is Blazina's only ground for good cause to vacate, and the three prongs are conjunctive, Blazina's motion to vacate cannot succeed. See Sun, 473 F.3d at 811.

Even if good cause were shown, the court notes that in terms of "quick action," the second prong, Blazina's argument is unavailing. Blazina argues he took quick action because a "little more than two weeks" after learning on August 15, 2011, of the eleven-year-old default judgment, Blazina enlisted counsel to move to vacate. Blazina's argument relies on deficient original service to excuse the eleven-year delay preceeding the "little more than two weeks." Because service was not deficient, the eleven-year

delay is not excused, and Blazina does not otherwise argue that it should be. Eleven years is not quick. See Jones, 39 F.3d at 165 (five weeks is not quick action); Zuelzke, 925 F.2d at 230 (four months not quick); Merrill Lynch Mortg. Corp., 908 F.2d at 252 (one year not quick).

As to a meritorious defense, the third prong, Blazina initially contends—and the government acknowledges—that the original lawsuit includes a tax claim that could be barred by the statute of limitations. This claim, according to the government, is one of many and worth just seven percent of the judgment. Blazina asserts that he has meritorious defenses to the rest of the government's case. Blazina claims that his brother has paid off part but not all of the judgment already. However, this is not a defense since a judgment must be fully satisfied. Second, Blazina asserts that he was not a "responsible officer" and was not "willful." Even if Blazina is right on the law, Blazina asserts a half-page of legal conclusions and nothing more. Blazina fails to ground his case in "facts which would support a meritorious defense of the action." Pretzel & Stouffer, Chartered, 28 F.3d at 46. Blazina has therefore failed to make a showing of a meritorious defense, beyond the statute of limitations defense to the claim worth seven percent of the judgment. The rest of the government's case is unchallenged. This is insufficient to establish the third prong. Because all three prongs must be satisfied, the motion to vacate the default judgment cannot succeed.

### C. Motion to Quash or Stay Citations to Discover Assets

Blazina argues that regardless of the outcome of the motion to vacate, the citations should be quashed or stayed. The government disagrees. As to Blazina himself, Blazina argues that an employee of the Internal Revenue Service served the citation,

which he claims is improper because the government is a party to the suit. See Fed. R. Civ. P. 4. The government points out that it is the United States that is a party, not the employee of the IRS who served the citation. Blazina, the government argues, was therefore not served the citation by a party. See United States v. Gregor, No. 86 C 8103, 1989 WL 6388, at *1 (N.D. Ill. Jan. 26, 1989) (finding that being an employee of the United States does not thereby make one a party to the action). The court agrees with the government. Service of the citation by an IRS agent complies with Rule 4.

Blazina next argues that service of a citation on Legal Collections, Inc. was deficient. The government agrees, admitting service was improper as to that corporate entity. The government nevertheless asserts that Legal Collections, Inc. waived its right to contest personal jurisdiction. The government contends waiver is based on the fact that Blazina's lawyer said that Blazina would "appear with respect to the [corporate entity's] citation while seeking additional time to respond to it." Government's Sur-reply 10. This argument misses the mark, but for more fundamental reasons. The court observes that only Blazina has moved the court to quash or stay the citations. The record reflects that Legal Collections, Inc. is neither a party nor represented by counsel. Yet both parties attempt to resolve this corporate entity's rights.

The court avoids this bramble bush. Whether the government served a corporate entity that is not a party, the rights of which it is not clear from the record that Blazina could assert, much less waive through his lawyer, does not appear to be properly before the court. What is clear is that the government admits it did not effectively serve a citation on Legal Collections, Inc. The simple solution where the government concedes a failure to accomplish service is for the government to properly serve the corporate entity.

## CONCLUSION

Blazina's challenge to personal jurisdiction failed. Because personal jurisdiction was Blazina's only ground for good cause in his motion to vacate, his motion fails on that front as well. Blazina's argument regarding service of the citation also fails. Accordingly, Blazina's motion to vacate the default judgment and to quash or stay citations is denied. Those individuals or entities properly served with citations shall produce documents and appear for depositions in compliance with the citation on or before November 11, 2011.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 10-20-11